1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FERRILL JOSEPH VOLPICELLI,

                Petitioner,

vs.

JACK PALMER, et al.,

                Respondents.

Case No. 3:10-cv-00005-RCJ-VPC

ORDER

       This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a Nevada state prisoner, is proceeding *pro se* (ECF #7).  Now before the court is respondents' answer to the remaining ground in the petition (ECF #49).  Petitioner filed a traverse to the answer (ECF #51).

**I. Procedural History and Background**

       Petitioner was convicted, pursuant to a jury trial, of one count of conspiracy to commit crimes against property, eight counts of burglary, and one count of unlawful possession, making, forgery or counterfeiting of inventory pricing labels.  Exh. 39.[1]  The state district court entered judgment of conviction on April 1, 2004.  *Id*.  The state court adjudicated petitioner a habitual criminal.  Exhs. 38, 39.  The court sentenced petitioner to one year in the Washoe County Jail for the conspiracy conviction, life with the possibility of parole after ten years on the burglary convictions and life with the possibility of parole after ten years on the possession conviction.  Exh. 39.  The burglary sentences were

_____

[1] Exhibits 1-152 are exhibits to respondents' motion to dismiss (ECF #19) and may be found at ECF #s 20-25.

concurrent, the possession sentence was to run consecutive to the burglary sentence, and the conspiracy sentence was to run concurrent to the burglary sentences. *Id.*

The Nevada Supreme Court affirmed petitioner's convictions on June 29, 2005, and remittitur issued on July 26, 2005. Exhs. 68, 69.

On November 9, 2005, petitioner filed a state postconviction petition for writ of habeas corpus. Exh. 75. The state district court appointed counsel, and a supplement to the petition was filed. Exhs. 88, 91. After briefing, the court granted the State's motion to dismiss in part. Exh. 100. The state district court then conducted an evidentiary hearing on two different dates with respect to the remaining four grounds. Exhs. 104, 119. The state district court issued written findings of fact, conclusions of law and judgment denying the petition. Exh. 120. The Nevada Supreme Court affirmed the denial of the petition on December 3, 2009, and remittitur issued on December 29, 2009. Exhs. 147, 148.

On December 30, 2009, petitioner dispatched his petition for writ of habeas corpus to this court (ECF #7). In an order issued May 17, 2012, the court granted respondents' motion to dismiss in part (ECF #38). Petitioner moved for a stay in order to exhaust his unexhausted claims, which this court denied (ECF #39). This court then granted petitioner's motion to dismiss the unexhausted claims (ECF #48). Respondents have answered the four claims of ineffective assistance of counsel that remain before the court (ECF #49).

## II. Legal Standards

### A. Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

-2-

1        The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

2   order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to

3   the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is

4   contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if

5   the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

6   or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

7   Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

8   *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)

9   and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  This court's ability to grant a writ is limited to cases

10  where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts

11  with [Supreme Court] precedents."  *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011).

12       A state court decision is contrary to clearly established Supreme Court precedent, within

13  the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law

14  set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

15  indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

16  from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v.*

17  *Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

18       A state court decision is an unreasonable application of clearly established Supreme Court

19  precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing

20  legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

21  of the prisoner's case."  *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413).  The

22  "unreasonable application" clause requires the state court decision to be more than incorrect or

23  erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*.

24  (quoting *Williams*, 529 U.S. at 409).

25       In determining whether a state court decision is contrary to federal law, this court looks to the

26  state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford*

27  *v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  Further, "a determination of a factual issue made

28

1  by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting

2  the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3  **B. Ineffective Assistance of Counsel**

4  Ineffective assistance of counsel claims are governed by the two-part test announced in

5  *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner

6  claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made

7  errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

8  Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529

9  U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the

10 defendant must show that counsel's representation fell below an objective standard of reasonableness.

11 *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for

12 counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A

13 reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.*

14 Additionally, any review of the attorney's performance must be "highly deferential" and must adopt

15 counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of

16 hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that

17 counsel's actions might be considered sound trial strategy. *Id.*

18 Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance

19 of counsel resulting in prejudice, "with performance being measured against an objective standard of

20 reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005)

21 (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based

22 on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that

23 there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

24 would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

25 If the state court has already rejected an ineffective assistance claim, a federal habeas court may

26 only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland*

27 standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's

28 conduct falls within the wide range of reasonable professional assistance. *Id.*

1   The United States Supreme Court has described federal review of a state supreme court's

2   decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

3   131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The

4   Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance. . . .

5   through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal

6   habeas review of an ineffective assistance of counsel claim is limited to the record before the state court

7   that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401. The United States Supreme

8   Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding

9   claims of ineffective assistance of counsel:

10         Establishing that a state court's application of *Strickland* was unreasonable under §
           2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are
11         both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320,
           333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,
12         review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland*
           standard is a general one, so the range of reasonable applications is substantial. 556 U.S.
13         at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of
           equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).
14         When § 2254(d) applies, the question is whether there is any reasonable argument that
           counsel satisfied *Strickland's* deferential standard.

15

16   *Harrington*, 131 S.Ct. at 788. "A court considering a claim of ineffective assistance of counsel must

17   apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable

18   professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an

19   attorney's representation amounted to incompetence under prevailing professional norms, not whether

20   it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

21   **III.  Instant Petition**

22         **Ground 7**

23         In the remaining claim in ground 7, petitioner alleges that his trial counsel rendered ineffective

24   assistance when he failed to object or otherwise protect petitioner from an allegedly excessive

25   restitution order (ECF #7, pp. 35-37). Petitioner argues that the restitution imposed was not accurately

26   computed, was not set out with specific findings, and exceeded the actual losses incurred. *Id.*

27

28

-5-

1   Respondents argue that this claim is not cognizable in federal habeas corpus proceedings (ECF

2   #49, p. 8).  This court agrees.  An order of restitution does not satisfy the requirement that a person be

3   "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

4   §2254(a); *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010).  Moreover, a petitioner cannot avoid the in-

5   custody requirement merely by raising his claim in the context of ineffective assistance of counsel.  *U.S.*

6   *v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002); *U.S. v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999);

7   *Washington v. Smith*, 564 F.3d 1350, 1351 (7th Cir. 2009).  Accordingly, ground 7 is not cognizable and

8   is denied.[2]

9   **Ground 8**

10   In the remaining portion of ground 8, petitioner claims that trial counsel was ineffective in

11   failing to challenge the convictions and sentences for both burglary and unlawful possession, making,

12   forging or counterfeiting inventory pricing labels as multiplicitous in violation of double jeopardy (ECF

13   #7, pp. 45-46).

14   To determine whether two offenses are the "same" for double jeopardy purposes, a court must

15   consider "whether each offense contains an element not contained in the other; if not, they are the 'same

16   offense' and double jeopardy bars additional punishment and successive prosecution."  *United States*

17   *v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

18   "Conversely, '[d]ouble jeopardy is not implicated so long as each violation requires proof of an element

---

[2]

20    Moreover, in affirming the denial of this claim, the Nevada Supreme Court pointed out that petitioner

21   failed to demonstrate prejudice and failed "to identify any way in which to reasonably calculate the
     value lost by the businesses" due to his crimes.  Exh. 147 at 6.  Further, petitioner's trial counsel

22   testified at the state postconviction petition evidentiary hearing that his and his client's main focus at
     sentencing was on the potential life sentences.  Exh.  104.  His counsel did not clearly recall the

23   restitution calculations, but testified that he did not, in hindsight, see a reasonable basis to challenge the

24   restitution and that at sentencing his client had been much more concerned with the potential life
     sentences than with any restitution award.  *Id*.  The sentencing transcript reflects that petitioner's

25   counsel did, in fact, question the restitution calculation.  Exh. 38 at 32-33.  Ground 7 is not cognizable

26   in federal habeas, but in any event, it cannot be said that the Nevada Supreme Court's disposition of
     petitioner's claim that his counsel was ineffective for failing to object to or challenge the restitution

27   order was contrary to or an unreasonable application of *Strickland* or other clearly established federal

28   law.  28 U.S.C. § 2254(d).

1   which the other does not.'" *Wilson v. Belleque*, 554 F.3d 816, 829 (9th Cir. 2009) (quoting *United States*

2   *v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003). "'If each [offense] requires proof of a fact that

3   the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof

4   offered to establish the crimes.'" *Id.* (quoting *Iannelli v. United States*, 420 U.S. 770, 785-86 n.17

5   (1975).

6          In affirming the denial of this claim, the Nevada Supreme Court set forth the *Blockburger* test.

7   Exh. 147 at 5.  The state supreme court also set forth the statutory elements of (1) burglary:  when a

8   person enters a building with the intent to commit any felony, or to obtain money or property under false

9   pretenses (NRS 205.060(1)); and (2) unlawful possession, making, forging or counterfeiting of

10  inventory pricing labels:  when a person possesses, makes, alters, forges, or counterfeits any sales

11  receipt or inventory pricing label with the intent to cheat or defraud a retailer (NRS 205.965(1)).  *Id.*

12  at 6.  The Nevada Supreme Court then concluded that the acts of burglary and the unlawful possession,

13  making, forging or counterfeiting of inventory pricing labels offense are distinct individual acts with

14  different double jeopardy principles, and therefore, the conviction and sentencing for the offenses does

15  not run afoul of double jeopardy safeguards.  *Id.*  The Nevada Supreme Court held that petitioner failed

16  to demonstrate a reasonable probability that the outcome of the proceedings would have been different

17  had trial counsel argued that the conviction and sentence for both crimes violated double jeopardy and

18  determined that the district court did not err in denying this claim.

19         As set forth above, the offenses of burglary and unlawful possession, making, forging or

20  counterfeiting of inventory pricing labels in Nevada each contain an element not contained in the other.

21  Thus, petitioner has failed to demonstrate that his counsel was deficient in not challenging the

22  convictions and sentences for both offenses on double jeopardy grounds nor has he demonstrated a

23  reasonable probability that the outcome of the proceedings would have been different.  Petitioner has

24  failed to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an

25  unreasonable application of, *Strickland* or other clearly established federal law.  28 U.S.C. § 2254(d).

26  Accordingly, ground 8 is meritless and is denied.

27

28

1

**Ground 11**

2        In the remaining portion of ground 11, petitioner claims that he was denied effective assistance

3 of counsel when trial counsel failed to impeach accomplice Brett Bowman's ("Bowman") allegedly

4 inconsistent and/or perjured testimony with Bowman's prior inconsistent statements (ECF #7, pp. 57-

5 69).

6        The Nevada Supreme Court examined the state district court's denial of this claim:

7            [Petitioner] compares statements Bowman made prior to trial with those that
         Bowman made during trial and argues they were inconsistent.  The district court
8        determined that the statements [petitioner] compares covered different topics and that
         the questions were posed differently in each situation.  The district court also determined
9        that the questions posed to Bowman necessarily elicited different answers.

10 Exh. 147 at 7.

11        Accordingly, the state supreme court held that: "Those statements were, therefore, consistent

12 statements that could not have been used for impeachment purposes.  *See* NRS 51.035(2)(a); *Leonard*

13 *v. State*, 958 P.2d 1220, 1230 (Nev. 1998)."  *Id*.

14        The Nevada Supreme Court held that petitioner failed to demonstrate a reasonable probability

15 that the outcome of the proceedings would have been different had trial counsel questioned Bowman

16 about these statements and determined that the district court did not err in denying this claim.

17        This court has reviewed the trial testimony, the transcript of the evidentiary hearing on the state

18 postconviction petition, as well as the state district court findings of fact, conclusions of law and order

19 denying petitioner's state postconviction petition.  The record  supports the Nevada Supreme Court's

20 conclusion that the state district court did not err in finding that Bowman's prior statements during

21 police interviews were not inconsistent, and therefore, could not have been used for impeachment

22 purposes.  *See, e.g.*, Exh. 120; Exh. 29D at 10-51 (Bowman's testimony); Exh. 29E, generally, and at

23 17-18, 21-28 (defense counsel's cross-examination of Bowman).  Petitioner claims that, contrary to

24 Bowman's trial testimony, detectives retrieved or arranged the retrieval of Bowman's last paycheck

25 from his employer (ECF #7, pp. 65).  Petitioner also claims that, contrary to Bowman's trial testimony,

26 Bowman had informed police that petitioner and Bowman had stolen the stereo that was in Bowman's

27 apartment when it was searched.  *Id*. at 65-67.  However, the record provides no support for these

28

-8-

contentions.  Even on the face of the petition, the alleged statements to police that petitioner compares to Bowman's statements at trial are not inconsistent.  *See, e.g., id.* at 65-67; *see also* Exh. 120, state district court order denying state postconviction petition at 3-4.  It appears that defense counsel tried, unsuccessfully, to elicit testimony from a detective that would contradict Bowman's testimony when he cross-examined the detective about how Bowman secured his last paycheck after he was arrested and about the stereo found in Bowman's apartment.  Exh. 30C at 33-41.  Instead, the detective testified that the police allowed Bowman to endorse his last paycheck before it expired and that there was a stereo in Bowman's apartment when they searched it that they did not investigate because it did not appear new and did not otherwise arouse police suspicion.  *Id.*  Neither Bowman's testimony or the testimony of three detectives from the Reno and Sparks Police Departments (or the supposedly inconsistent statements petitioner lists in ground 11) supports the claim that Bowman made inconsistent statements.  Exh. 30 at 1-42;  Exh. 30B at 1-11; 32-51; Exh. 30C at 1-32.

Petitioner has failed to meet his burden of demonstrating that his counsel's performance was deficient for allegedly failing to impeach a witness with statements that were neither inconsistent with the witness's prior statements or admissible hearsay under state law.  Petitioner also has failed to demonstrate a reasonable probability of a different outcome.  The Nevada Supreme Court's denial of the claim was not contrary to or an unreasonable application of *Strickland* or other federal law.  Accordingly, ground 11 is denied.

**Ground 18(b)**

Petitioner claims that trial counsel was ineffective for failing to object to the State's improper use of a 2004 conviction in seeking a habitual criminal enhancement (ECF #11-2, pp. 109-110).

The State sought habitual criminal adjudication of petitioner and filed a 2004 judgment of conviction for obtaining money by false pretenses along with two other judgments of conviction – (1) a 1997 federal conviction of four counts of felony tax perjury and (2) a 1998 Nevada conviction of two counts of burglary.  Exh. 38 at 4-5, 44.  The indictment in the instant case was filed in June 2003 for criminal conduct that occurred in 2001.  Exh. 4.

NRS 207.010(1)(a) provides that a person with two prior felonies may be sentenced as a habitual criminal to five to twenty years imprisonment.  NRS 207.010(1)(b) provides that a person with three

1   previous felonies may be sentenced as a habitual criminal to (1) life without the possibility of parole;

2   (2) life with the possibility of parole after ten years; or (3) a definite term of twenty-five years, with

3   eligibility for parole after ten years. In Nevada, "[a]ll prior convictions used to enhance a sentence must

4   have preceded the primary offense." *Brown v. State*, 624 P.2d 1005, 1006 (Nev. 1981).

5       In affirming the denial of this claim, the Nevada Supreme Court agreed with petitioner that

6   because the 2004 judgment of conviction was not entered before the unlawful actions leading to the

7   convictions in the instant case occurred, the 2004 conviction was not properly used as a past conviction

8   for purposes of adjudication as a habitual criminal in this case. Exh. 147 at 3 (citing *Brown*, 624 P.2d

9   at 1005 (Nev. 1981). However, the state supreme court pointed out that the two other judgments of

10   conviction presented consisted of six additional felonies that were properly considered in the habitual

11   criminal determination and noted that petitioner does not argue otherwise. *Id*.

12       The state supreme court specifically discussed the fact that the prosecution presented evidence

13   that the felony tax perjury convictions

14           stemmed from a plan running over at least four years, with numerous
           transactions, through which [petitioner] fraudulently gained at least $800,000.
15           Accordingly, the previous tax perjury convictions were not the result of the same act,
           transaction, or occurrence and may be used as four separate convictions for purposes of
16           habitual criminal adjudication. *Rezin v. State*, 596 P.2d 226, 227 (Nev. 1979).

17   *Id*. at 4. *See also* sentencing hearing, Exh. 38 at 39-40, 58.

18       The Nevada Supreme Court thus concluded that any error was harmless because, even without

19   the 2004 conviction, the State presented a sufficient number of convictions for the habitual criminal

20   enhancement. *Id*. (citing NRS 178.598: "[a]ny error, defect, irregularity or variance which does not

21   affect substantial rights shall be disregarded"). The Nevada Supreme Court noted the state district

22   court's statement to petitioner: "you are the poster child for habitual criminality in that every time

23   you're released from custody it seems like you're out making a full-time living stealing," in concluding

24   that petitioner failed to demonstrate a reasonable probability that the outcome of the sentencing hearing

25   would have been different had his trial counsel objected to the use of the 2004 conviction. *Id.*

26       Petitioner has failed to demonstrate that the Nevada Supreme Court's denial of the claim was

27   contrary to or an unreasonable application of *Strickland* or other federal law. Accordingly, ground 18(b)

28   is denied.

-10-

1    The petition is thus denied in its entirety.

2    **IV.  Certificate of Appealability**

3    In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

4    U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th

5    Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).   Generally, a

6    petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

7    certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

8    (2000).   "The petitioner must demonstrate that reasonable jurists would find the district court's

9    assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In

10   order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

11   debatable among jurists of reason; that a court could resolve the issues differently; or that the questions

12   are adequate to deserve encouragement to proceed further.  *Id.*  This court has considered the issues

13   raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of

14   appealability, and determines that none meet that standard.  The court will therefore deny petitioner a

15   certificate of appealability.

16   **V.  Conclusion**

17   **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (ECF #7) is

18   **DENIED IN ITS ENTIRETY**.

19   **IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and

20   close this case.

21   **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

22   **APPEALABILITY.**

23   Dated this 30th day of April, 2015.

24

25

26   UNITED STATES DISTRICT JUDGE

27

28

-11-